# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

DAQUAN ALTARI ALFORD,

Defendant.

No. 4:22-CR-00010

(Chief Judge Brann)

## MEMORANDUM OPINION AND ORDER

### JUNE 11, 2024

In May 2024, Daquan Altari Alford ("Altari") filed a motion to suppress evidence under *Franks v. Delaware*,[1] contending that the affidavit of probable cause supporting a search warrant for Altari's apartment contained intentional or reckless omissions or misrepresentations.[2] Altari also requested an evidentiary hearing to address his motion to suppress evidence.[3]

There are four situations in which an officer's reliance on a warrant is not objectively reasonable.[4] As relevant here, such a situation arises where "the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit."[5] If such a finding is made, the good faith exception does not apply.[6]

---

[1]   438 U.S. 154 (1978).
[2]   Motion to Suppress, Doc. 87.
[3]   *Id.* at 3.
[4]   *United States v. Williams*, 3 F.3d 69, 71 n.2 (1993).
[5]   *United States v. Am. Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1106 (3d Cir. 1989) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).
[6]   *Id.*

In *Franks v. Delaware*, the Supreme Court of the United States set out the allegations necessary to mandate a hearing to challenge a search warrant's veracity.[7] Because there is "a presumption of validity with respect to an affidavit supporting [a] search warrant,"[8] *Franks* requires a demanding preliminary showing before a hearing is even granted.

As summarized by the United States Court of Appeals for the Third Circuit, "there must be a 'substantial preliminary showing' that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause."[9] "In order to make this preliminary showing, the defendant cannot rest on mere conclusory allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses."[10]

The Third Circuit has further specified what constitutes a reckless disregard for the truth in Fourth Amendment cases:

> In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, we hold that: (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.[11]

---

[7]   *Id.*
[8]   *Id.* at 155-56.
[9]   *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (citing *Franks*, 438 U.S. at 171).
[10]  *Id.* (citing *Franks*, 438 U.S. at 171).
[11]  *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000).

I find that Altari has satisfied this preliminary showing and a hearing is warranted. In brief, Altari claims that the search warrant was premised on an affidavit in which Pennsylvania State Police Trooper Robert Williamson conflates his identity and the identity of his father, Daquan Alteriki Alford ("Alteriki").[12] The Government states that "[t]he affidavit did not contain 'deliberately or recklessly false [statements]'" because "[t]hroughout the body of the affidavit, Alteriki, not Altari, is identified."[13] This is not correct. The warrant authored by Trooper Williamson conflates the two Alfords throughout by referring to both as "Daquan Alford."[14] While the warrant once identifies Altari's date of birth and license number, and later refers to "the defendant, Daquan 'Baby' ALFORD," a reasonable magistrate would have no way of knowing that these are distinct persons, because that is never stated.[15] The rest of the affidavit merely refers to "Daquan Alford" or "Alford," giving a magistrate no way of differentiating the two Alfords, or even knowing that they are separate persons.

This is significant because only Alteriki was connected to drug activity in the affidavit, but the warrant was issued to search Altari's apartment. According to the affidavit, the landlord relayed that "Daquan Alford" rented the apartment alongside Kiem Alford.[16] Trooper Williamson had to know that Altari rented the apartment because he reproduced Altari's date of birth and license number on the first page of the

---

[12] *See* Brief in Support, Doc. 88, *generally*.
[13] Brief in Opposition, Doc. 89 at 18.
[14] Affidavit of Probable Cause, Doc. 88-1.
[15] *Id.* at 1, 4.
[16] *Id.* at 5.

warrant under "Occupant/Renter."[17] Because the landlord is referring to the person who "rents" the apartment, any reader who knows that the "Daquan Alford" referenced on the first page as "Occupant/Renter" is Altari will also know that the "Daquan Alford" the landlord identified is Altari. That exposes a gap in the affidavit which fails to trace Alteriki to his son's apartment. This evidence supports Altari's preliminary showing that Trooper Williamson either intentionally or recklessly referred to "Daquan Alford" in the warrant and muddled the Alfords' distinct identities, presenting a continuous yet misrepresented narrative in which the person selling illegal drugs and the person renting the apartment are one and the same.

Aside from the face of the affidavit itself, the preliminary hearing transcript also supports Altari's preliminary showing that this misrepresentation was either intentional or reckless. At Alteriki's preliminary hearing, Trooper Williamson, who authored this affidavit, admitted to knowing that Alteriki maintained a distinct residence at 608 Seventh Avenue, and knowing that it was Altari, not Alteriki, whose name was on the lease of this apartment.[18] Trooper Williamson further testified that 608 Seventh Avenue was the residence Alteriki left with the Pennsylvania State Parole Office, that Alteriki's parole officer confirmed that this was his residence at an unspecified date, and that he had personally visited that residence, spoken with a resident in the building, and seen Alteriki's "well-kept" bedroom.[19] Based upon the information available to Trooper

---

[17]   *Id.* at 1.
[18]   *See* Preliminary Hearing Transcript, Doc. 88-2 at 6:19—7:14; 9:4—10:23.
[19]   Preliminary Hearing Transcript, Doc. 88-2 at 9:4—10:23.

Williamson at the time he wrote the affidavit, it seems difficult to believe that he did not know the distinct identities of Altari and Alteriki, and it is also difficult to believe, absent a hearing, that he did not have reason to understand the impact of conflating them throughout the affidavit.

These inaccuracies can be characterized as both a misrepresentation and an omission; they misrepresent the link between the defendant and the residence to be searched by referring to both by their shared names, while omitting information clarifying that they are different persons. Regardless of which lens is applied, Altari has satisfied his preliminary showing. In a case where a third party's residence is being searched for evidence of a defendant's crimes, any reasonable magistrate assessing probable cause would wish to know that these are different people; Trooper Williamson also had reason to know that he was misrepresenting or conflating the evidence because both the affidavit and the preliminary hearing clarify that he knew of Altari and Alteriki's distinct identities.

Once these misrepresentations and omissions are identified and shown to be intentional or reckless, "the remaining truthful statements, standing alone, do not establish probable cause."[20] Even where an officer searches a drug dealer's home, the Third Circuit has not stated that there is always probable cause to search; it states that while "a drug dealer *in some circumstances may* use his home to store evidence associated with drug dealing," probable cause is "not readily, or even usefully, reduced

---

[20]   *United States v. Desu*, 23 F.4th 224, 235 (3d Cir. 2022).

to a neat set of legal rules."[21] While "[t]he probable cause assessment does not require direct evidence linking a place to be searched to a crime,"[22] "the Fourth Amendment precludes the search of a home lacking a 'nexus' to the alleged crimes."[23]

"[P]robable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested."[24] Where direct evidence linking a suspect to a location is lacking, "a magistrate may infer probable cause from 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide . . . [evidence]."[25] As the Third Circuit stated in *Untied States v. Burton*, the "reasonable inference . . . that drug dealers often store evidence of drug crimes in their residences . . . is based on evidence supporting three preliminary premises: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's activities."[26]

---

[21] *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 233 (1983)); *see also United States v. Vastola*, 670 F.Supp. 1244, 1271 (D.N.J. 1987) ("[T]he fact that there is probable cause to believe that a person has committed a crime does not automatically give the police probable cause to search his house for evidence of that crime."); *United States v. Toney*, 819 F.App'x 107, 111 (3d Cir. 2020) ("And while evidence that a suspect is a drug dealer is not in itself probable cause to search his residence, probable cause exists where there is a connection between the suspect's home and his drug-dealing activities."). *See also United States v. Basking*, 853 F.App'x 783, 786 (3d Cir. 2021) (noting that because drug dealers often maintain and use multiple properties to spread out and conceal their drugs, evidence of a confirmed dealer's movements among multiple properties links each location and provides adequate probable cause).

[22] *United States v. Coles*, 264 F.Supp. 667, 679 (M.D. Pa. 2017).

[23] *United States v. Stearn*, 597 F.3d 540, 558 (3d Cir. 2010).

[24] *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002).

[25] *Id.* (quoting *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993)).

[26] *Id.* at 104.

If even a defendant's status as a drug dealer does not always support searching his own home, it surely does not support searching his son's home without any other corroborating evidence that the drug dealer is using it. The familial connection between Altari and Alteriki is insufficient to sustain the warrant because "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."[27] The only other evidence potentially linking Alteriki to the apartment is a confidential informant's statement that Alteriki conducted a drug deal on the "700 block" of First Avenue which is in the general vicinity of Altari's apartment building, and an "unknown black male" received a backpack of drugs from Alteriki, and walked in the general direction of the apartment building.[28] While proximity of criminal activity to the residence to be searched can support probable cause that the defendant stores drug-related evidence there,[29] this alone is insufficient to show that the drug dealer lived at or used the residence.

---

[27] *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979); *see also Fisher v. Volz*, 496 F.2d 333, 342 (3d Cir. 1974) ("A warrant for the arrest of a suspect may indicate that the police officer has probable cause to believe the suspect committed a crime; it affords no basis to believe that the suspect is in some stranger's home.").

[28] Affidavit of Probable Cause, Doc. 88-1 at 4. ("On may 1, 2021, at approximately 0826 hrs, I spoke with the CI [confidential informant] who relayed the following . . . . At approximately 0215 hrs, the CI met with ALFORD . . . ALFORD drove the CI to the area of the 700 blk of First Avenue . . . made a phone call to an unknown black male . . . proceeded to meet with unknown black male and provided subject with a backpack containing the drugs . . . . The unknown black male then proceeded to carry the backpack he received from ALFORD towards the residence of 832 High Street.").

[29] *See United States v. Hodge*, 246 F.3d 301, 307 (3d Cir. 2001) (proximity of criminal activity and defendant's home supported probable cause that defendant stored drug-related evidence in his home).

Although familial connection and general proximity of criminal activity have been considered by courts when inferring that a drug dealer is using a residence to store drugs, this has always been accompanied by additional evidence. The most common evidence is that officers have observed the drug dealer entering and exiting the residence or parking in front of it.[30] Courts have also considered that the drug dealer owns keys to the residence,[31] is named on the lease of the residence,[32] receives mail at the residence or lists it on a driver's license[33] or other Government documents,[34] provides this residence to the probation office,[35] or confirmation from a resident[36] or confidential informant that the defendant resides at the specified address.[37] This is not an exhaustive list, but it is illustrative of the simple yet critical showing necessary. Many kinds of evidence are available to show that a suspect resides at or uses a

---

[30] *Burton*, 288 F.3d 91, 104; *United States v. Bangaroo*, No. 3:15-CR-00174, 2017 U.S. Dist. LEXIS 130109, at *28-29 (M.D. Pa. Aug. 15, 2017); *United States v. Herrera*, Criminal Action No. 23-96, 2023 U.S. Dist. LEXIS 166095, at *15-16 (E.D. Pa. Sep. 18, 2023); *United States v. Johnson*, 187 F.Supp. 3d 548, 552-53 (M.D. Pa. 2016); *United States v. Gaskins*, No. 06-1152, 2007 U.S. App. LEXIS 25021, *6-7 (3d Cir. Oct. 25, 2007); *United States v. Harris*, No. 06-1286, 2007 U.S. App. LEXIS 25022, at *6 (3d Cir. Oct. 25, 2007); *United States v. Walker*, 776 F.App'x 784, 786 (3d Cir. 2019); *United States v. Rosario*, 837 F.App'x 117, 120 (3d Cir. 2020).

[31] *United States v. Majeed*, Criminal No. 08-186, 2009 U.S. Dist. LEXIS 68130, at *8-9 (E.D. Pa. Aug. 4, 2009) (defendant had keys and a garage door opener for his girlfriend's residence).

[32] *United States v. Abdul-Ganui*, No. 2:10cr16, 2010 U.S. Dist. LEXIS 131993, at *27 (W.D. Pa. Dec. 14, 2010).

[33] *United States v. Freeman*, 666 F.Supp. 2d 454, 462 (D. Del. 2009); *United States v. Harris*, No. 06-1286, 2007 U.S. App. LEXIS 25022, at *6 (3d Cir. Oct. 25, 2007).

[34] *United States v. Adam*, No. 2:23-cr-180-2-NR, 2024 U.S. Dist. LEXIS 53459, at *8-9 (W.D. Pa. Mar. 26, 2024).

[35] *United States v. Harper*, No. 2:20-cr-00806 (BRM), 2021 U.S. Dist. LEXIS 162543, at *12-13 (D.N.J. Aug. 26, 2021).

[36] *United States v. Smith*, 224 F.App'x 194, 198-99 (3d Cir. 2007).

[37] *United States v. Jones*, No. 3:21-CR-126, 2023 U.S. Dist. LEXIS 33429, at *14-15 (M.D. Pa. Feb. 28, 2023).

residence. But all such evidence is absent from the affidavit. Based on Altari's preliminary showing, Trooper Williamson may have intentionally or recklessly relied on a misrepresented version of the facts rather than gathering any information tying Alteriki to Altari's residence. What is left after that misrepresentation or error is corrected raises doubt as to the existence of probable cause.

This Court can only identify one analogous case, and in that case the evidence supporting a search was more compelling and yet the motion to suppress was granted. In *United States v. Rodriguez*, the United States District Court for the Eastern District of Pennsylvania considered a search warrant executed upon the apartment of a defendant whose father was a drug dealer.[38] The only additional evidence was that the defendant's father had used the defendant's car to collect drug proceeds, the defendant had met with other drug dealers in public, and the defendant appeared "extremely nervous" when agents visited his home.[39] Based on this evidence, the court concluded not only that probable cause was lacking to search the defendant's home, but also that the good faith exception did not apply, because "the logical connection between the evidence presented in the warrant application and probable cause to search [Defendant's] apartment was [so] extremely attenuated and speculative" that "no

---

[38] Criminal Action No. 13-619-6, 2014 U.S. Dist. LEXIS 124814, at *12-13 (E.D. Pa. Sep. 8, 2014).

[39] *Id.* at *14.

objectively reasonable police officer could believe that the search of [Defendant's] apartment was lawful."[40]

Altari's burden is even less than that in *Rodriguez*, in which the evidence of probable cause was greater, because he is not required to rebut a good faith defense. As no evidence links any of Alteriki's drug activities to Altari's residence aside from the Alfords' familial association and Alteriki's drug deal in the apartment's general vicinity, a reasonable magistrate would have no basis to conclude that Alteriki possessed or used Altari's apartment once the confusion surrounding control of the apartment is stripped from the affidavit of probable cause.

The other potential misrepresentations or omissions raised by Altari may be raised at the *Franks* hearing and may be considered by this Court when ultimately ruling whether to suppress this evidence. But because this misrepresentation or omission alone is enough to satisfy the preliminary showing required under *Franks*, I do not reach the other alleged misrepresentations or omissions here. At the hearing, Altari must prove his allegations by a preponderance of the evidence for the evidence to be suppressed.[41] I also note that after the hearing, this Court will only grant the motion to suppress if it concludes that doing so "would serve to 'appreciably deter' future violations of the Fourth Amendment, not to remedy a past violation suffered by the defendant."[42]

---

[40] *Id.* at *14-15.
[41] *Franks*, 438 U.S. at 156.
[42] *See United States v. Lawrence*, No. 4:22-CR-00360-01, 2023 U.S. Dist. LEXIS 187251, at *6-7 (M.D. Pa. Oct. 17, 2023).

Finally, I note that while Alteriki was being investigated for drug trafficking, the precise timeline of this investigation, and the information known to officers at the time this warrant was executed, is unclear. Depending upon the information known to officers at the time at the time the warrant was executed, the inevitable discovery doctrine may present an alternative basis to deny Altari's motion to suppress. I highlight this potential exception to the exclusionary rule in this scheduling order so that Altari is afforded "the 'opportunity to adduce evidence in his favor'" on this matter.[43]

Consequently, **IT IS HEREBY ORDERED** that:

1.  An evidentiary hearing is **SCHEDULED** for **July 24, 2024 at 10:00 a.m.** in Courtroom One, Fourth Floor, United States Courthouse and Federal Building, 240 West Third Street, Williamsport, Pennsylvania, 17701.

2.  Each party shall submit to the deputy clerk before or at the outset of the hearing two (2) copies of a list of exhibits[44] the party expects to admit.

3.  Each party shall submit to the deputy clerk before or at the outset of the hearing either two (2) binders **and** a USB flash drive holding copies of documentary exhibits. The binders are for the convenience of the Court;

---

[43] *United States v. Sinkler*, 267 F.App'x 171, 174 (3d Cir. 2008) (quoting *United States v. Salazar*, 805 F.2d 1394, 1400 (9th Cir. 1986) (district court did not violate defendant's due process rights by raising inevitable discovery doctrine to deny motion to suppress *sua sponte*, because it afforded defendant opportunity to adduce evidence in his favor on this matter at evidentiary hearing); *see also United States v. Brooks*, 358 F.Supp. 3d 440, 462 (W.D. Pa. 2018); *United States v. Shabazz*, No. 3:12-cr-64, 2012 U.S. Dist. LEXIS 154099, at *5 (M.D. Pa. Oct. 26, 2012).

[44] See attached form. You may contact Chambers to obtain a Word version of this form.

the party should retain the "best evidence" of the document for purposes

of admission during the proceedings.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

**Caption:**

**Case No:**

**Judge:**

**Date:**

## EXHIBIT LIST

| Completed by Counsel | | Completed by Courtroom Deputy | | |
|---|---|---|---|---|
| Exhibit No. (P/D-#) | Exhibit Description | Date Identified | Date Admitted | Witness |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |